Doris **BRADDY**, Individually and on behalf of all others similarly situated, Plaintiff,

v.

**SOUTHERN BELL TELEPHONE & TELEGRAPH CO.**, Defendant-Appellee,

Equal Employment Opportunity Commission, Intervenor-Appellant.

No. 71-2172.

United States Court of Appeals, Fifth Circuit.

Jan. 11, 1972.

Rehearing and Rehearing En Banc Denied March 29, 1972.

Lutz Alexander Prager, Stanley P. Hebert, Gen. Counsel, John de J. Pemberton, Jr., Deputy Gen. Counsel, Julia P. Cooper, Chief, Appellate Section, E.E.O.C., Washington, D. C., for the Commission.

Bishop C. Holifield, Bruce S. Rogow, Miami, Fla., for Doris Braddy, and others.

Vincent L. Sgrosso, William D. Goddard, Atlanta, Ga., for Southern Bell.

Before THORNBERRY, AINSWORTH and CLARK, Circuit Judges.

CLARK, Circuit Judge:

In this case the Equal Employment Opportunity Commission (EEOC) seeks the power to act as a party to litigate issues relevant to its basic function, a function permitted to most of its sister agencies. But having found that Congress did not invest it with this prerogative, we can no more create it judicially than we could clothe ourselves with jurisdiction not conferred.

■ The setting against which the issue is presented is this. Doris Braddy filed a class action against Southern Bell Telephone and Telegraph Company (Bell) on behalf of all unwed. mothers, alleging that Bell's employment policy of refusing to hire such unwed mothers was unlawful discrimination. The EEOC was permitted to enter the case as *amicus curiae*. Subsequently, negotiations were commenced between Braddy, the other named plaintiff, Vassar, and Bell for a settlement of the suit. A satisfactory solution was worked out between these parties, and the district court was requested to approve the settlement. The EEOC did not learn of the agreement in time to file written objections with the court before the hearing on approval, but did manage to orally convey to the court at the hearing that it intended to apply to intervene in the suit and oppose the settlement. However, the district court in its order took no cognizance of the EEOC's desire to intervene and entered an order approving the settlement and dismissing the action.

On March 1 the EEOC filed a written motion to intervene pursuant to Fed.R. Civ.P. 24. The EEOC alleged that the named plaintiffs had abandoned the class and entered a settlement detrimental to the class. It also alleged that the district court had failed to issue any notice to the class as required by Fed.R.Civ.P. 23(e). On March 24 the district court denied the motion, succinctly stating that it found "that the intervenor is not entitled to intervene in this action." The appeal by the EEOC eventuated.

Bell admits that this motion can be construed to be a Rule 59(e) motion to alter or amend the judgment. Fed.R. Civ.P. 59(e). However, the timeliness of the motion as a Rule 59(e) motion is in dispute. The EEOC argues that if this is not a timely filed Rule 59(e) motion, then the motion can be viewed as a Rule 60(b)(6) motion for relief from final judgment. Fed.R.Civ.P. 60(b)(6). Bell challenges EEOC's party status to seek this relief. We decline to enter this federal procedural thicket further than to observe that the appeal turns upon whether Congress intended the EEOC to be such a party to a lawsuit as could file either of the above motions.

The EEOC relies upon Section 706(i) of the Civil Rights Act of 1964 to support its position here. That section states:

> In any case in which an employer, employment agency, or labor organization fails to comply with an order of a court issued in a civil action brought under subsection (e) of this section, the Commission may commence proceedings to compel compliance with such order. 42 U.S.C.A. § 2000e–5(i).

The EEOC contends that Congress intended by this section to automatically transform the EEOC into a party at the moment of judgment, thus enabling it to file any post-judgment motions it deemed appropriate. While this argument is ingenious and may not be without merit as a policy matter, we are compelled to reject it since the statutory scheme does not envisage such an active litigious role for the EEOC. We bottom our conclusion on the plain words of Section 706(i) itself, the legislative scheme as manifested by other provisions of Title VII, and the available, but scant, legislative history of Title VII.

The bill as passed by the House empowered the EEOC to enforce the provisions of Title VII by instituting civil actions in federal courts. The Senate version, however, limited the role of the EEOC to one of investigation and conciliation. The House accepted the Senate view. We think this significantly

evinces a desire on the part of Congress to proscribe EEOC activity in the enforcement of Title VII.[1] Furthermore, Title VII makes it patently clear that only an aggrieved party may file suit (42 U.S.C.A. § 2000e–5(e) (1970)), and the only intervention by the federal government that is permitted is an intervention by the Attorney General. Even that intervention must be with the permission of the court. *Id.*[2] Indeed the only EEOC activity permitted in this area is a recommendation to the Attorney General that he ought to intervene in certain cases and to advise and assist him in those cases. 42 U.S.C.A. § 2000e–4(f) (6) (1970).

■ We deem it significant that *express* intervention rights are given to the Attorney General but none are given to the EEOC. This clearly indicates no room for us to find *implicit* intervention rights in the very same statute. Rather, it is evident from the statutory scheme that the EEOC is not to involve itself with Title VII enforcement, except as provided by Section 706(i). We can discern no intended vestiture of power to this creature of statute to delve into the remedial aspects of a private Title VII lawsuit. *See* Hutchings v. United States Industries, Inc., 428 F.2d 303, 313–314 (5 Cir. 1970). Of course the EEOC may be permitted to appear as *amicus curiae* as was done in the court below, and as we have done on occasion. As an *a priori* matter, there is fatal flaw in the EEOC's contention that it becomes a party to the lawsuit at the moment of judgment and is thus enabled to assist in the fashioning of remedies. Had Congress intended the EEOC to enter the remedial aspects of a lawsuit, it *would undoubtedly have allowed the EEOC to intervene before a final order was entered* instead of impliedly permitting it to attack a final order it found to be defective.

We do not agree that it can be reasoned that, since Section 706(i) grants power to the EEOC to commence proceedings to enforce compliance with a court order, Congress must have intended for the EEOC to have a hand in framing that which it is empowered to sue to enforce. The syllogism goes that if they are not held to possess such ungranted power, they could be left with the Hobson's choice of not enforcing a court order or enforcing a poor one. This could be the result, but this sort of bootstrapping cannot create a legislative grant where none exists. Congress simply took the approach that this bureau was not to be the agency by which judicial relief was to be fashioned. It was not to be permitted the role of a party litigant, except to aid in compelling compliance with a decree previously entered. The wisdom, or lack of it, in such a concept cannot change the plain blueprint of this enactment. Such arguments are for solons, not judges.

The EEOC relies upon Equal Emp. Op. Com'n v. United Ass'n of J. & A. of Plumbing and Pipefitting Industry, etc., 438 F.2d 408 (6th Cir. 1971), to bolster its position. In that case, the district court had ordered the parties to a collective bargaining agreement to renegotiate portions of the agreement solely for the purpose of Title VII compliance. The renegotiated portions were later "tentatively approved" (so characterized by the 6th Circuit) by the district court. The EEOC then commenced an action pursuant to Section 706(i) seeking to have the parties to further renegotiate the agreement, alleging that it was defective in various particulars. The 6th Circuit held that this cause of action could be maintained since it was an attempt to compel compliance with the district court's original order to renegotiate. In our case the EEOC is not

---

1. For a deeper discussion of the legislative history, see Equal Emp. Op. Com'n v. United Ass'n of J. & A. of Plumbing and Pipefitting Industry, etc., 438 F.2d 408 (6th Cir. 1971), and Vaas, Title VII: Legislative History, 7 B.C. Ind. & Com. L.Rev. 431 (1966).

2. Of course the Attorney General can bring "pattern and practice suits" under 42 U.S.C.A. § 2000e–6 (1970).

trying to compel compliance with a court order. It is trying to *invalidate* one.

 The EEOC also argues that its construction of the statute is entitled to great weight and deference by this court. It has been pointed out that from its inception the EEOC has interpreted the statute as allowing its intervention in Title VII lawsuits. *See* Letter to the Attorney General from the General Counsel, May 3, 1966; 1 CCH, Employment Practices Guide ¶1261.85. It is of course the rule that where the proper construction of a statute is in doubt, a court should pay deference to an agency interpretation "where the administrative practice at stake involves a contemporaneous construction of a statute by the man charged with the responsibility of setting its machinery in motion . . . F. D. I. C. v. Sumner Financial Corp., 451 F.2d 898 (5th Cir. 1971). "The construction of a statute by those charged with its execution should be followed unless there are compelling indications that it is wrong." *Id.* The problem for this argument is that those "compelling indications" have been demonstrated here, for we find the statutory scheme is clearly to the contrary.

Neither can the EEOC rely upon Fed. R.Civ.P. 24(a), for that would torture the Rules of Civil Procedure into substantive legislation allowing an agency to accomplish a denouement forbidden by the provisions of the Act by which the agency was created. The EEOC, however, points to Section 1103, 42 U.S. C.A. § 2000h-3 (1970), as indicating that Congress intended to permit it Rule 24(a) intervention rights. This statute says:

> Nothing in this Act shall be construed to deny, impair, or otherwise affect any right or authority of the Attorney General or of the United States or any agency or officer thereof under existing law to institute or intervene in any action or proceeding.

Since we interpret this section as addressing itself to the intervention rights of agencies other than the EEOC, we cannot agree. It confers nothing on the EEOC. The Congress merely wanted to be sure that the rights of other agencies under the substantive provisions of their respective Congressional enactments would not be questioned or impaired by this prolix and complex Act.

A few closing caveats are appropriate. We do not intend by this opinion to delineate the parameters within which the EEOC is allowed to function under Section 706(i). We hold only that the EEOC does not become a party to a private Title VII lawsuit either before or after a final order has been entered. Since the EEOC is not a party to the suit, it need not be consulted as to the remedial aspects of that suit (except to the extent the court may wish to do so, if it occupies an *amicus curiae* capacity), nor may it seek to overturn any final order. Nothing in this opinion should be read to impair the rights of the unnamed members of the class in this action to seek to vitiate the final order approving the settlement.

Since the EEOC had no right to file the motion it did, it follows that it could not prosecute this appeal. The appeal is

Dismissed.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

 In its petition for rehearing, the EEOC argues that it should have been permitted to intervene under Fed.R.Civ. P. 24(b), and that the court below abused its discretion in not allowing such intervention. Since Fed.R.Civ.P. 82 provides that the Rules of Civil Procedure do not extend or limit the jurisdiction of the district courts, our prior discussion relating to the Congressional intent embodied in Title VII adequately demonstrates that the district court should not have authorized permissive intervention. Finally, we note that the 7th Circuit, in an opinion published subsequent to our main opinion, has reached the same conclusion under similar circumstances. Air Lines Stewards and Stew-

ardesses Association, Local 550 v. American Airlines, Inc., 455 F.2d 101 (7th Cir. 1972).

The Petition for Rehearing is denied and the Court having been polled at the request of one of the members of the Court and a majority of the Circuit Judges who are in regular active service not having voted in favor of it (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12), the Petition for Rehearing En Banc is also denied.